## BOS v. GAUDIO.

1. DEATH—SURVIVAL ACT—GREAT WEIGHT OF EVIDENCE—APPEAL AND ERROR.

Verdict for plaintiff in action for injuries, resulting in death of decedent infant, for damages under count based on survival act *held,* not against the great weight of the evidence even though the Supreme Court might disagree with such determination were it a fact-finding body (3 Comp. Laws 1929, § 14040).

2. SAME—SURVIVAL ACT.

Damages may be claimed under the survival act when the testimony shows that the injured party survived the accident (3 Comp. Laws 1929, § 14040).

3. SAME—SURVIVAL OF ACCIDENT—QUESTION FOR JURY.

Question for jury is presented as to whether or not a person survived an accident, where testimony as to signs of life is conflicting.

4. SAME—INFANTS—MEASURE OF DAMAGES—SURVIVAL ACT.

Instruction in survival action for death of five and one-half-year old boy that measure of damages was present worth of what boy likely would have earned for probable balance of his life after reaching age of 21 years *held,* proper.

5. Appeal and Error—Remittitur—Misapplication of Mortality
    Tables.

  Judgment for damages awarded against parties guilty of negli-
    gence in causing death of five and one-half-year old boy is
    affirmed upon condition of remittitur of excess of amount re-
    sulting from misapplication of mortality tables pursuant to
    erroneous instruction by trial court.

Appeal from Superior Court of Grand Rapids;
Perkins (Willis B.), J., presiding. Submitted
April 18, 1934. (Docket No. 70, Calendar No. 37,727.)
Decided June 4, 1934.

Case by Peter Bos, administrator of the estate of
Raymond Bos, deceased, against Harold Gaudio and
others for injuries resulting in death of plaintiff's
decedent alleged to be due to negligence of defend-
ants. Case dismissed as to defendants Allen. From
verdict and judgment for plaintiff against defend-
ants Gaudio, Reynolds and Avery, they appeal.
Modified and affirmed.

*Louis H. Grettenberger,* for plaintiff.

*Dunham & Sherk,* for defendants.

Butzel, J. Raymond Bos was one of the children
fatally injured by appellants' truck on November 20,
1931, in the accident fully described in the case of
*Bishop* v. *Gaudio,* 263 Mich. 65. Peter Bos, as ad-
ministrator of Raymond's estate, has brought the
present suit, in which negligence and liability are no
longer issues, the sole questions involved being
whether plaintiff may recover under the survival
act (3 Comp. Laws 1929, § 14040), or the death act
(3 Comp. Laws 1929, §§ 14061, 14062), and whether
the amount of the verdict is excessive. Raymond
was five and one-half years of age when the accident

occurred. He received an extensive skull fracture and never regained consciousness. There evidently was no pain or suffering. The jury awarded damages under the survival count of the declaration. Appellants contend that this was error, claiming that the decedent's death was instantaneous, notwithstanding a possible few spasmodic reflexes that frequently occur at the time of dissolution. The question is an exceedingly close one. Witnesses frequently differ in their versions of the details of an accident, and this is particularly likely to occur when, in an instant, a number of small children are fatally injured. Decedent received an injury so severe that it might have caused instantaneous death. Disinterested witnesses testified that they saw no movement of the body, no breathing or other signs of life; that the body lay limp. One of the doctors testified that when the child was brought to the hospital in Grand Rapids, in an interval described as from a few moments to a half hour after the accident, life was extinct.

However, we cannot say that the verdict was against the great weight of the testimony, even though we might have disagreed with the jury's determination were we a fact-finding body. Gaudio, the driver of the truck, testified that he held the child in his arms on the way to the hospital; that he could feel the child's body twitch; that he heard a sound like a gurgle or a gasp; and that the child still showed some signs of life when they reached the hospital, from 20 to 30 minutes later. Gaudio's testimony was exceedingly uncertain, halting, and at times contradictory, though evidently convincing to the jury. One of the physicians stated that he made an examination about a half hour after the child was brought to the hospital, and that in his

opinion, death had occurred only 15 or 20 minutes prior to that time. He testified that the boy "lived unquestionably a considerable time after he was injured, in my opinion. * * * The body felt warm, as though he had died very recently." Another doctor stated that "In my opinion the death was not instantaneous. Those things rarely are;" that inspiratory movements of the chest in swallowing must have occurred after the accident, since there was a very small quantity of blood in the trachea and stomach. When the testimony shows that the injured person survived the accident, damages may be claimed under the survival act. It becomes a question for the jury. See *Olivier* v. *Railway Co.*, 134 Mich. 367 (104 Am. St. Rep. 607, 3 Ann. Cas. 53); *Paperno* v. *Michigan Railway Engineering Co.*, 202 Mich. 257; *Swaczyk* v. *Detroit Edison Co.*, 207 Mich. 494; *Budnick* v. *Peterson*, 215 Mich. 678; *Nelson* v. *Glover*, 231 Mich. 229; *Micks* v. *Norton*, 256 Mich. 308.

The jury rendered a verdict of $6,765.60, or approximately $6,600, plus the funeral expenses of $165.50. Mortality tables were introduced showing an expectancy of 51.13 years. The jury was properly instructed that the measure of damages was the present worth of what the boy likely would have earned for the probable balance of his life, from and after the time he reached the age of 21 years. The trial judge in his charge stated that in order to determine the present worth of the boy's probable earnings from year to year after he had reached the age of 21, the jury should divide the probable earnings of the first year after the age of 21 by 1.05, those of the second year by 1.10, and those of each subsequent year by a figure .05 larger. After the verdict was rendered, the judge's attention was

called to the fact that the divisor for the first year should have been 1.775, or thereabouts. He sought to correct the error by ordering a remittitur of $1,765.60, thus reducing the judgment to $5,000. See *Gwitt* v. *Foss*, 230 Mich. 8, and *Gleason* v. *Lowe*, 232 Mich. 300.

The question is raised as to whether this reduction was sufficient to correct the error. The present value of a dollar, discounted on a ratio of 1.05, as the judge directed, is .95238, but if discounted, as it should have been, for 15½ years at 5 per cent. simple interest, it would only come to .56338, a difference of .38900. This discrepancy of .38900 amounts to 40.845 per cent. of .95238, the figure arrived at by the erroneous use of 1.05 as a divisor. Therefore the amount calculated by the jury at 1.05 would have to be reduced by 40.845 per cent. in order to place the determination on the correct basis of 1.775. The discrepancy resulting from the error in the amount of the divisor for the first year would become smaller from year to year, as an additional .05 was added to the respective divisors.

It is impossible to say with any degree of certainty how long the boy would have lived, were it not for the accident, or how much he would have earned had he survived his 21st birthday, or whether such earnings would have increased or diminished as he grew older. We cannot even conjecture how the jury arrived at its award, since we do not know upon what assumptions the award was based. The trial court evidently reduced the judgment from $6,765.60 to $5,000, in the reasonable belief that the jury based its award on the assumption that decedent would have lived out his entire expectancy. Appellee states in a memorandum brief that if the computation were made on that basis, the amount

of the judgment should have been reduced from $6,600 to $4,723.15, which, adding the funeral bill of $165.50, would make the correct sum $4,888.65.

However, without laying down any rule of law, we believe that, considering the possible mistake made in the calculation, the fact that there was no pain or suffering, and all the other circumstances of the case, the judgment should be still further reduced. The amount of the jury's verdict, exclusive of funeral expenses, was approximately $6,600. This sum, reduced by 40.845 per cent. leaves $3,904.23. If the funeral expenses of $165.50 are added to this latter amount, the total award is brought to $4,069.-73, or $930.27 less than the amount of the judgment as reduced by the trial court. The judgment should, therefore, be further reduced by $930.27.

If appellee will, as he has indicated by his counsel in the memorandum brief, file a remittitur of $930.27 within 10 days from the time this opinion is handed down, the judgment will be affirmed at $4,069.73; otherwise, it will be set aside and a new trial ordered. We need not discuss other claims of error made by appellants, for even if there were any merit to them, they do not affect the result. Appellants will recover costs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.